IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY HASTON, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 20-1008 ) ) |
| RESURGENT CAPITAL SERVICES, L.P., FRONTLINE ASSET STRATEGIES, LLC, and JOHN DOES 1-5, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Presently before the Court is a Motion to Compel Arbitration and Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Resurgent Capital Services, L.P. ("Resurgent") and Frontline Asset Strategies, LLC ("Frontline") in this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, Plaintiff's Response in opposition thereto, and Defendants' Reply. (Docket Nos. 7, 8, 10, 11). After careful consideration of the parties' arguments in light of the prevailing legal standards, and for the following reasons, Defendants' Motion is denied without prejudice.

**II.    BACKGROUND**

Plaintiff commenced this action by filing a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania alleging a claim against Defendants for violation of the FDCPA. (*See generally* Docket No. 1-1). As alleged in the Complaint, LVNV Funding, LLC ("LVNV")

allegedly purchased a Synchrony Bank account that had been issued to Plaintiff, which he used to make gasoline purchases, among other personal and household items (the "Account"). (*Id.*, ¶¶ 14, 17). Plaintiff alleges that LVNV subsequently "engaged Resurgent to collect the Account," and Resurgent then "assigned and/or transferred to or otherwise hired Frontline to collect the Account." (*Id.*, ¶¶ 15, 16). To that end, Plaintiff asserts that Defendants sent him a letter in an attempt to collect the Account, which is attached to the Complaint, stating that "[u]nless you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid." (*Id.*, ¶¶ 19, 23; Ex. A). Plaintiff contends that the letter was "false, deceptive, misleading and/or confusing" because the FDCPA allows consumers to dispute debts orally or in writing. (*Id.*, ¶¶ 27-29). Plaintiff brings the FDCPA claim in his individual capacity and on behalf of a purported class. (*Id.*, ¶¶ 35, 46).

On July 6, 2020, Defendants timely removed the action to this Court pursuant to 28 U.S.C. § 1446(a). (Docket No. 1). Defendants then filed the Motion to Compel Arbitration on July 27, 2020, arguing that Plaintiff's claim cannot proceed here because the terms of the Account Agreement between him and Synchrony Bank in the form attached to its supporting memorandum (the "Agreement") prohibit class action lawsuits and require that all disputes related to the Account be resolved through arbitration. (Docket Nos. 8 at 2-3, 7-8; 8-1). According to Defendants, the terms of the arbitration provision apply not just to Plaintiff and Synchrony Bank as the original creditor, but also to Defendants because the Agreement permitted Synchrony to sell, assign or transfer any or all of its rights or duties under the Agreement or the Account, including its right to payment. (Docket No. 8 at 3, 9-11). In this instance, Defendants submit that all rights in the Account ultimately were transferred to LVNV, which subsequently retained Resurgent to service the Account on its behalf and Resurgent, in turn, retained Frontline to do so. (*Id.* at 3, 10).

As such, Defendants argue that they have the authority to enforce the arbitration clause contained in the Agreement, and Plaintiff's Complaint should be dismissed and his claim should be submitted to arbitration pursuant to the Agreement's terms. (*Id.* at 3, 10-11).

On August 17, 2020, Plaintiff filed his Response, arguing that Defendants' Motion should be denied because there is no competent evidence to suggest that he agreed to arbitrate his claims against them. (Docket No. 10 at 2, 7-8). Even if there were, Plaintiff argues that the scope of the arbitration clause Defendants seek to enforce does not cover this dispute and, even if it did, Defendants cannot compel arbitration because they are not parties to the Agreement. (*Id.* at 2, 4, 10-15). In Reply filed on August 31, 2020, Defendants assert that they have proffered sufficient evidence to establish the Agreement's existence, reiterate that the arbitration clause covers this dispute, and maintain that they can enforce it. (*See generally* Docket No. 11). The parties' briefing is now complete and the matter is ripe for disposition.

### III. ANALYSIS

Initially, Plaintiff's Complaint acknowledges that his claim against Defendants under the FDCPA arises from an account that he opened with Synchrony Bank. As shown by the challenged collection letter attached to the Complaint, Plaintiff's account number is referenced, Synchrony Bank is listed as the original creditor, BP is the referenced merchant, and LVNV is listed as the current creditor. (Docket No. 1-1, Ex. A). Further, Plaintiff admits that "[t]he Account arose out of transaction(s) incurred and/or used by [him] primarily for personal, family, or household purposes including, but not limited to, gasoline purchases." (*Id.* ¶ 17). Despite Plaintiff's acknowledgment of his Account with Synchrony Bank, he contests whether the Account is subject to the Agreement which Defendants submit controls. According to Plaintiff, there is nothing to suggest that the Agreement applies because it is unsigned and undated, it does

not reference Plaintiff or the Account, and affidavits submitted by Defendants' employees asserting that the Agreement is applicable are insufficient because those individuals do not have actual knowledge of the matter. (Docket No. 10 at 7). Plaintiff maintains that Defendants have not produced any competent evidence to show that he was provided with notice of, or assented to, the Agreement. (*Id.*).

As noted, Defendants claim that the Agreement, which Synchrony Bank supposedly provided when Plaintiff opened the Account, controls here. (Docket Nos. 8 at 2; 8-1). According to that Agreement, Synchrony Bank "may sell, assign or transfer any or all of our rights or duties under [the] Agreement or your account, including our rights to payments." (Docket No. 8-1 at 3). Relative to the present dispute, the Agreement contains a section entitled "Resolving A Dispute With Arbitration" which cautions to "READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. . . ." (*Id.*). The section further specifies:

> If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user or your account, and us, our affiliates, agents and/or BP Products North America Inc. if it relates to your account, except as noted below.

(*Id.*). The Agreement additionally provides that "YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION." (*Id.*).

With this background, the Court turns to consideration of the applicable legal standard and concludes, for the following reasons, that limited discovery is warranted in this case to resolve the threshold issue of whether a valid agreement to arbitrate exists between the parties to this action.

## A. LEGAL STANDARD

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, establishes a strong federal policy in favor of the resolution of disputes through arbitration. *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003). However, this strong federal policy favoring arbitration "does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). Rather, "[b]efore compelling a party to arbitrate . . . a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citation omitted).

When ruling on a motion to compel arbitration, a district court should use either a motion to dismiss or a motion for summary judgment standard. A Rule 12(b)(6) standard should be used "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause . . . ." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citation omitted). However, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question." *Id.* (internal quotation marks and citation omitted). After limited discovery, the court may entertain a renewed motion to compel arbitration, this time evaluating the motion under the Rule 56 summary judgment standard. *Id.*

Here, the crux of the parties' dispute is whether an agreement to arbitrate exists between them, as demonstrated by the fact that "the motion to compel arbitration does not have as its

5

predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate." *Guidotti*, 716 F.3d at 774 (internal quotation marks and citation omitted); *Schultz v. Midland Credit Mgmt., Inc.*, Civ. No. 16-4415, 2019 WL 2083302, at *7 (D.N.J. May 13, 2019) (denying motion to compel arbitration pending further development of factual record where complaint did not mention the plaintiff's underlying credit card agreement with Synchrony Bank and its only attachments were collection letters which the plaintiff alleged violated the FDCPA). Accordingly, the Court concludes that the Rule 12(b)(6) standard is inappropriate, limited discovery is necessary on the threshold issue of the existence of a valid arbitration agreement, and after completing such discovery, Defendants may renew their motion to compel arbitration, which will be evaluated under the Rule 56 standard. *Guidotti*, 716 F.3d at 774-75.

### B. LIMITED DISCOVERY IS WARRANTED TO RESOLVE THE THRESHOLD ISSUE OF WHETHER A VALID AGREEMENT TO ARBITRATE EXISTS

Although Plaintiff has not attached to the Complaint the operative credit card agreement relating to his Account, Defendants' moving papers include the Agreement which they contend controls. The Agreement supplied by Defendants appears to be a form document which Plaintiff complains does not refer to him or his Account. (*See* Docket Nos. 8-1; 10 at 7). That same form Agreement is also attached to the Declarations of Kim Hannigan, who is employed by Defendant Resurgent's legal department, and Christina Palmer, who is employed by Defendant Frontline's legal department. (*See* Docket Nos. 8-2, Ex. 2; 8-3, Ex. 1). Both Ms. Hannigan and Ms. Palmer aver that the Agreement applies to Plaintiff's Account. (Docket Nos. 8-2, ¶ 7; 8-3, ¶ 4). To the extent Plaintiff contests the applicability and/or authenticity of the Agreement, it bears noting that courts in this Circuit have ruled that credit card agreements which lack personal identifiers do not sufficiently cast doubt on the existence of an agreement. *See Valentine v. Midland Funding, LLC*,

Civ. No. 19-18034, 2020 WL 7074352, at *3 (D.N.J. Dec. 3, 2020) (observing that lack of personal identifiers on credit card agreement does not sufficiently place at issue validity of agreement); *Banks v. Barclays Bank Credit Svcs.*, Civ. No. 1:17-CV-00096, 2018 WL 6576414, at *3 (M.D. Pa. Oct. 30, 2018) (explaining that "sample credit card agreements or exemplars of what a defendant normally gives to its customers is evidence of the written contract the plaintiff received"). Given that the parties will be undertaking limited discovery on whether a valid agreement to arbitrate exists, the Agreement's applicability and/or authenticity can be addressed at that time, if necessary.

Additionally, it is undisputed that Defendants were not signatories to the Agreement containing an arbitration provision. Although arbitration is a "matter of contract between the parties," *Guidotti*, 716 F.3d at 771, there are circumstances under state contract law in which a non-signatory may enforce or be bound to an arbitration agreement. *See White v. Sunoco, Inc.*, 870 F.3d 257, 262 (3d Cir. 2017) (" 'traditional principles' of state law allow a contract to be enforced by or against nonparties through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.' ") (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).

In this case, Defendants argue that they are entitled to enforce the arbitration provision because: the Agreement permitted Synchrony to sell, assign or transfer any or all of its rights or duties under the Agreement or the Account, including its right to payment; Synchrony transferred, sold and assigned to Sherman Originator III LLC ("Sherman III") certain accounts, which included Plaintiff's Account; Sherman III then transferred, sold and assigned all of its right, title and interest to those receivables to Sherman Originator LLC ("Sherman LLC"); Sherman LLC subsequently transferred, sold and assigned to LVNV the receivables; and, all of the foregoing

transactions included the transfer and assignment of Plaintiff's Account, including all related claims or rights.  (Docket No. 8 at 3, 9-10).  Defendants submit that, as current owner of Plaintiff's Account, LVNV occupies the same legal position under the Agreement as the original creditor and contracting party, Synchrony Bank, and therefore has the power to collect the balance due on the Account.  (*Id.* at 10).  To do so, LVNV retained Resurgent to service the Account on its behalf, and Resurgent in turn retained Frontline to do so, thus Defendants maintain that they have the authority to enforce the arbitration provision in the Agreement.  (*Id.*).

As evidence of the above-described transactions, Defendants point to the following exhibits attached to Ms. Hannigan's Declaration: (1) the Bill of Sale pursuant to which Synchrony Bank transferred, sold, conveyed, granted and delivered to Sherman III, its successors and assigns, "the Accounts as set forth in the Notification Files (as defined in the [Forward Flow Accounts Purchase Agreement]) . . . and as further described in [said] Agreement"; and (2) the Transfer and Assignment pursuant to which Sherman III transferred, sold, assigned, conveyed, granted and delivered to Sherman LLC "all of its right, title and interest in and to the receivables and other assets identified on Exhibit A" thereto and pursuant to which Sherman LLC then transferred, sold and assigned same to LVNV.  (Docket No. 8-2, Ex. 1).  The referenced Exhibit A simply lists "Receivables File 03.23.20 Synchrony_36782", "Transfer Group 647576", "Portfolio 36782", and "Transfer Batch N/A".  (*Id.*).

Despite Defendants' broad assertion that "all of above-described assignments and sales included the transfer and assignment of Plaintiff's Account," (Docket No. 8 at 10), consideration of the language recited above and a review of the Bill of Sale and the Transfer and Assignment with attached Exhibit A make clear that the various assignments do not appear to be specific to Plaintiff's Account because the documents, on their face, do not identify or refer to the Account.

Rather, the purported connection between Plaintiff's Account and the assignments is offered by Ms. Hannigan's Declaration, which states that "by various Bills of Sale and Assignments of Accounts attached hereto collectively as Exhibit 1,[1] Synchrony's right, title, and interest in the Account were assigned to LVNV." (Docket No. 8-2, ¶ 6). Ms. Hannigan further avers, albeit without reference to any supporting documentation, that LVNV subsequently "retained" Resurgent to service and manage accounts receivable, including Plaintiff's Account, and Resurgent then "retained" Frontline for the same purpose. (*Id.*, ¶¶ 10, 11). Ms. Palmer likewise avers in her Declaration that Frontline was retained by Resurgent to service Plaintiff's Account, but she fails to provide any documents describing the retention or its terms. (Docket No. 8-3, ¶ 3).

Although the Court does not question the veracity of Ms. Hannigan's or Ms. Palmer's sworn Declarations, the documents upon which they rely are either incomplete or appear to be missing. Accordingly, it is unclear on the present record whether Defendants have acquired the right to enforce the arbitration provision they seek to invoke.

To illustrate, the Bill of Sale provided that the transferred Accounts were "as set forth in the Notification Files (as defined in the [Forward Flow Accounts Purchase Agreement])." (*See* Docket No. 8-2, Ex. 1). The term "Accounts" is not defined in the Bill of Sale and Defendants have not provided the referenced Notification Files or the Forward Flow Accounts Purchase Agreement. As such, it is impossible to determine whether Plaintiff's Account was included in the "Accounts" referenced in the Bill of Sale. Similarly, the Transfer and Assignment only references the "receivables and other assets identified on Exhibit A" and Exhibit A's listing of "Receivables File 03.23.20 Synchrony_36782" does not specify whether Plaintiff's Account was

---

[1]     Exhibit 1 to Ms. Hannigan's Declaration consists of the referenced Bill of Sale and Transfer and Assignment with attached Exhibit A described herein.

included among those that were ultimately transferred to LVNV, let alone what rights may have been included as part of that transfer.  Finally, Defendants point to no averments in the complaint, documentation, or other evidence detailing LVNV's subsequent retention of Resurgent to service and manage accounts receivable, including Plaintiff's Account, or Resurgent's retention of Frontline for the same purpose.  Defendants' failure to proffer evidence of the nature, scope, and material terms of the assignments described in Ms. Hannigan's Declaration, as well as the scope and material terms of the retentions of Resurgent and Frontline referenced by both her and Ms. Palmer, warrants limited discovery on those issues.  *See Lance v. Midland Credit Mgmt. Inc.*, 375 F. Supp. 3d 604, 616 (E.D. Pa. 2019) (denying defendant debt collector's motion to compel arbitration where arbitrability was ambiguous and ordering limited discovery on the issue); *Kennedy v. LVNV Funding, LLC*, Civ. No. 18-10695, 2019 WL 1789477, at *3 (D.N.J. Apr. 24, 2019) (denying motion to compel arbitration without prejudice and ordering limited discovery on whether the defendants succeeded in or were assigned the original creditor's debt under a credit card agreement); *Page v. N.A.R. Inc.*, Civ. No. 18-cv-2200, 2019 WL 1370146, at *4 (D.N.J. Mar. 26, 2019) (finding limited discovery warranted concerning whether original creditor validly assigned its rights to the defendant, a non-party to the agreement, thereby enabling the defendant to invoke arbitration provision).

In sum, there is no clearly established agreement to arbitrate on the face of the Complaint, and the basis upon which Defendants claim authority to enforce the arbitration provision derives from a purported series of assignments of Plaintiff's Account from Synchrony Bank to various other entities leading ultimately to the purported "retention" of Defendants.  Yet, Defendants have not adequately supported these assertions by adequate record evidence.  Nor has Plaintiff had the opportunity for discovery on these transactions or the Declarations of Ms. Hannigan and

Ms. Palmer introducing them, but is entitled to do so pursuant to *Guidotti*, 716 F.3d at 774.

Following discovery focused on whether a valid and enforceable agreement to arbitrate has been formed between the parties, Defendants may file a renewed motion which will be evaluated under the Rule 56 standard. *Guidotti*, 716 F.3d at 776. If such a motion is filed, the parties shall address which state's law governs resolution of whether a valid agreement to arbitrate was reached and how that state's law would resolve the question. *See White*, 870 F.3d at 263-65.

### IV.     CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel Arbitration and Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 7) is DENIED WITHOUT PREJUDICE. The parties shall promptly proceed to limited discovery on the threshold issue of whether a valid agreement to arbitrate exists. After this limited discovery is complete, Defendants may file a renewed motion to compel arbitration if warranted.

An appropriate order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:       December 21, 2020

cc/ecf:     All counsel of record