# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY HASTON, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 20-1008 ) |
| RESURGENT CAPITAL SERVICES, L.P., FRONTLINE ASSET STRATEGIES, LLC, and JOHN DOES 1-5, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is the Renewed Motion to Compel Arbitration and Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Renewed Motion to Compel Arbitration") and accompanying Memorandum filed by Defendants Resurgent Capital Services, L.P. ("Resurgent") and Frontline Asset Strategies, LLC ("Frontline"), along with Plaintiff's Response in Opposition thereto, and Defendants' Reply. (Docket Nos. 20, 21, 24, 25). Plaintiff also filed a Notice of Supplemental Authority. (Docket No. 26). After careful consideration of the parties' arguments in light of the prevailing legal standards, and for the following reasons, Defendants' Renewed Motion to Compel Arbitration is denied.

### II. BACKGROUND

Plaintiff commenced this action by filing a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging a claim against Defendants for violation of the Fair

1

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. (Docket No. 1-1). Defendants timely removed the action to this Court pursuant to 28 U.S.C. § 1446(a). (Docket No. 1).

As alleged in the Complaint, LVNV Funding, LLC ("LVNV") allegedly purchased a Synchrony Bank ("Synchrony") account that had been issued to Plaintiff, which he used to make gasoline purchases, among other personal and household items (the "Account"). (Docket No 1-1, ¶¶ 14, 17). Plaintiff alleges that LVNV subsequently "engaged Resurgent to collect the Account," and Resurgent then "assigned and/or transferred to or otherwise hired Frontline to collect the Account." (*Id.*, ¶¶ 15, 16). To that end, Plaintiff asserts that, in an attempt to collect the Account, Defendants sent him a letter (attached to the Complaint as Exhibit A) stating that "[u]nless you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid." (*Id.* ¶¶ 19, 23, & at 14). Plaintiff contends that the letter was "false, deceptive, misleading, and/or confusing" because the FDCPA allows consumers to dispute debts orally or in writing. (*Id.* ¶¶ 27-29). Plaintiff asserts the FDCPA claim in his individual capacity and on behalf of a purported class. (*Id.* ¶¶ 35, 46).

Defendants then filed a Motion to Compel Arbitration and brief in support (Docket Nos. 7, 8), arguing that Plaintiff's claim cannot proceed here because the terms of the agreement between him and Synchrony in the form attached to its supporting memorandum (the "Account Agreement") prohibit class action lawsuits and require that all disputes related to the Account be resolved through arbitration. (Docket Nos. 8 at 2-3, 7-8; 8-1). According to Defendants, the terms of the arbitration provision apply not just to Plaintiff and Synchrony as the original creditor, but also to Defendants because the Account Agreement permitted Synchrony to sell, assign or transfer any or all of its rights or duties under the Account Agreement or the Account, including its right

to payment. (Docket No. 8 at 3, 9-11). In this instance, Defendants submit that all rights in the Account ultimately were transferred to LVNV, which subsequently retained Resurgent to service the Account on its behalf and Resurgent, in turn, retained Frontline to do so. (*Id.* at 3, 10). As such, Defendants argue that they have the authority to enforce the arbitration clause contained in the Account Agreement, and Plaintiff's Complaint should be dismissed and his claim should be submitted to arbitration pursuant to the Account Agreement's terms. (*Id.* at 3, 10-11). Plaintiff filed his Response, arguing that Defendants' Motion should be denied because there is no competent evidence to suggest that he agreed to arbitrate his claims against them. (Docket No. 10 at 6, 11-12). Even if there were, Plaintiff argued that the scope of the arbitration clause Defendants seek to enforce does not cover this dispute and, even if it did, Defendants cannot compel arbitration because they are not parties to the Agreement. (*Id.* at 6, 8, 14-19). In Reply, Defendants assert that they have proffered sufficient evidence to establish the Account Agreement's existence, reiterate that the arbitration clause covers this dispute, and maintain that they can enforce it. (*See generally* Docket No. 11). Upon consideration of Defendants' Motion and the parties' briefs, the Court issued a Memorandum Opinion and Order of Court denying Defendants' Motion without prejudice and ordering the parties to conduct limited discovery on the issue of arbitrability. (Docket Nos. 13, 14).

After conducting limited discovery on the issue of arbitrability (Docket No. 18), Defendants filed their Renewed Motion to Compel Arbitration and the parties submitted extensive briefs and supporting evidentiary materials. (Docket Nos. 20, 21, 24, 25). Plaintiff also submitted a Notice of Supplemental Authority (Docket No. 26). The matter is now ripe for disposition.

### III. <u>DISCUSSION</u>

According to the Account Agreement, Synchrony "may sell, assign or transfer any or all

of our rights or duties under [the] Agreement or your account, including our rights to payments." (Docket No. 21-1 at 2). The Account Agreement also contains a section entitled "RESOLVING A DISPUTE WITH ARBITRATION," which cautions to "READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION." (*Id.*). The section further specifies:

1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or BP Products North America Inc. if it relates to your account, except as noted below.

2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

3. Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

(*Id.*). The Account Agreement additionally provides that "YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION." (*Id.*). Moreover, this section of the Account Agreement also contains provisions entitled "How to state an arbitration, and the arbitration process" and "Governing Law for Arbitration." (*Id.*). Finally, this section concludes with the following text in bold font:

You may reject this Arbitration section of your Agreement. If you

4

> do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to Synchrony Bank, . . . . This is the only way you can reject this section.

(*Id.*). With this background, the Court turns to consideration of the applicable legal standard and concludes that Defendants may not invoke this arbitration clause for the reasons that follow.

### A. Applicable Legal Standards and Governing Law

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, establishes a "'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). However, the "presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Id.* (quoting *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). Indeed, "[b]efore compelling a party to arbitrate . . . a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009) (citing *Kirleis*, 560 F.3d at 160). Now that the parties have had an opportunity to conduct discovery regarding arbitrability (Docket Nos. 14 and 18), Defendants' Renewed Motion to Compel Arbitration will be evaluated under the Rule 56 summary judgment standard. *See Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 775-76 (3d Cir. 2013).

To determine whether the parties have agreed to arbitrate, the Court must apply "'ordinary state-law principles that govern the formation of contracts.'" *Century Indem. Co.*, 584 F.3d at 524 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In this case, the parties agree that Utah law governs because the Account Agreement provides that "[t]his

5

Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA) [and] Utah law shall apply to the extent state law is relevant under the FAA." (Docket No. 21-1 at 2; *see also* Docket Nos. 21 at 5; 24 at 11). Under Utah law, the formation of an arbitration agreement requires an offer, an acceptance, and consideration; and, moreover, arbitration agreements are governed by statute and that to be enforceable they must be in a written document setting forth the scope of the dispute to be arbitrated. *See Createrra, Inc. v. Sundial, LC*, 304 P.3d 104, 107-108 (Utah Ct. App. 2013) (citing Utah Code Ann. § 78B-11-107(1)); *see also Cea v. Hoffman*, 276 P.3d 1178, 1185-1186 (Utah Ct. App. 2012) (defining offer, acceptance, and consideration).

### B. The Court and Not an Arbitrator Decides Arbitrability in this Instance.

As a threshold matter, Defendants contend that Plaintiff's challenge to the enforceability or validity of the arbitration provision contained in the Account Agreement must be decided by an arbitrator and not by the Court. Defendants further argue that the arbitration provision delegated the arbitrability decision to an arbitrator. Accordingly, the Court must discern whether there is a valid agreement between the parties to delegate questions of arbitrability and whether the parties' intent to delegate arbitrability is "clear and unmistakable." *Zirpoli v. Midland Funding, LLC*, No. 21-2438, 2022 WL 3971783, at *5 (3d Cir. Sept. 1, 2022) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019)).

Here, the arbitration provision contains the following language:

> *Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof* (*including*, without limitation, the next paragraph of this section [involving a class action waiver] *and/or this sentence*). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

(Docket No. 21-1 at 2) (emphasis added). A plain reading of this language, particularly the

italicized text, does not clearly and unmistakably express an agreement to arbitrate the issue of arbitrability, but instead reflects the opposite. Importantly, Plaintiff's principal arguments against arbitration pertain to whether Defendants can invoke *the arbitration provision* as an agent or by equitable estoppel. Plaintiff's opposition clearly pertains to the validity, enforceability, coverage, and scope of the arbitration provision and not of the Account Agreement as a whole. Accordingly, arbitrability must be decided by the Court and not by an arbitrator.

Having decided that the issue of arbitrability has not been delegated to an arbitrator, the Court must now address Plaintiff's arguments that Defendants cannot enforce the arbitration clause contained in the Account Agreement because Defendants are not signatories to it, that they have not proffered evidence to establish that the right to compel arbitration was conveyed from Synchrony to LVNV and then to them as LVNV's agents, and that Defendants' principal, LVNV, has not demanded arbitration which Plaintiff contends is a condition precedent to compelling arbitration. Each of Plaintiff's contentions are addressed in turn.

### C. **Defendants Cannot Enforce the Arbitration Provision of the Account Agreement as Agents or Pursuant to Equitable Estoppel Under Utah Law.**

Neither Plaintiff nor Defendants signed the Account Agreement containing the arbitration provision. While those facts are not necessarily fatal to enforcing or being bound by the arbitration provision, Defendants cannot invoke the arbitration provision as agents of LVNV in this instance because they are attempting to do so for their own benefit. Defendants also may not invoke the arbitration provision pursuant to the doctrine of equitable estoppel.

#### 1. **Plaintiff Accepted the Account Agreement and its Arbitration Provision by Using the Account.**

Even though Plaintiff did not sign the Account Agreement containing the arbitration provision, such credit card agreements do not need to be signed by the party to be charged to be

7

enforceable under Utah law. Pursuant to Utah Code § 25-5-4(2)(e), a credit card agreement is binding and enforceable without any signature by the party to be charged if:

> (i) the debtor is provided with a written copy of the terms of the agreement;
>
> (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and
>
> (iii) after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Here, Plaintiff received the Account Agreement that specifically states, "By opening or using your account, you agree to the terms of the entire Agreement.[1] The entire Agreement includes the four sections of this document . . ." of which "Section III: Standard Provisions" contains the arbitration provision. (Docket No. 21-1 at 2). Furthermore, Plaintiff used the account "primarily for personal, family, or household purposes including, but not limited to, gasoline purchases," for which he enrolled in e-bill notification and received bills for such usage. (Docket Nos. 1-1, ¶ 17; 21-2, ¶ 9 & at 11-28 (Ex. 3); 21-3). Finally, and importantly, Plaintiff did not exercise his right to reject the arbitration provision of the Account Agreement. (Docket No. 21-2, ¶ 12). Accordingly, the evidentiary record clearly reflects that Plaintiff used the Account after being provided with the Account Agreement that informed him that he agreed by his usage to be bound by its terms and conditions, including the arbitration provision. These circumstances satisfy the criteria set forth in Utah Code § 25-5-4(2)(e). *See, e.g., Mounts v. Midland Funding LLC*, 257 F. Supp. 3d 930, 939-40 (E.D. Tenn. 2017) (applying Utah law).

---

[1] Plaintiff also received subsequent changes to the terms of the Account Agreement. (Docket No. 21-2, ¶ 8 & at 8-9 (Ex. 2)).

## 2. Defendants Cannot Enforce the Arbitration Provision of the Account Agreement for their Own Benefit as Agents of LVNV or Pursuant to the Doctrine of Equitable Estoppel.

Utah recognizes five circumstances in which a non-signatory can enforce or be bound by an arbitration agreement: (i) incorporation by reference; (ii) assumption; (iii) agency; (iv) veil-piercing/alter ego; and (v) estoppel.[2] *Ellsworth v. American Arbitration Ass'n*, 148 P.3d 983, 989 & n.11 (2006). Here, Defendants contend that they can enforce the arbitration provision of the Account Agreement via agency or estoppel.

### (a) Agency

Defendants contend that they can enforce the arbitration provision of the Account Agreement as agents of LVNV, who itself was assigned (or assumed) the Account Agreement from Synchrony and thus "stands in the shoes" of Synchrony. In support of this contention, Defendants point to a series of assignments beginning with a Bill of Sale that transferred and conveyed Plaintiff's "account, debt, and credit card agreement," among others, from Synchrony to Sherman Originator III LLC ("SOLLC III"). (Docket Nos. 21-2, ¶ 10; 21-4; 21-5, ¶¶ 5-6). Then, SOLLC III sold, assigned, and conveyed a pool of accounts, including Plaintiff's Account, to Sherman Originator LLC ("SOLLC"), who then sold, assigned, and conveyed these accounts, including Plaintiff's Account, credit card agreement, and related records, to LVNV. (Docket Nos. 21-5, ¶¶ 6-7; 21-6, ¶¶ 5-10; 21-7; 21-8, ¶¶ 7-11). Such assignments are expressly permitted by the Account Agreement, which provides that Synchrony (which is referenced throughout as "'we'," 'us' or 'our'") "may sell, assign or transfer any or all of our rights or duties under this Agreement or your account, including our rights to payments. We do not have to give you prior notice of such action. You may not sell, assign or transfer any of your rights or duties under this Agreement or

---

[2] Utah additionally recognizes the closely analogous third-party beneficiary theory. *See Ellsworth*, 148 P.3d at 989 and n.11.

9

your account." (Docket No. 21-1 at 2).

Plaintiff contends that Defendants' proffered evidence is insufficient to establish LVNV's acquisition of the right to enforce the arbitration provision they seek to invoke because Defendants did not produce certain operative documents describing those assignments with particularity. While Plaintiff correctly notes that the evidentiary record does not contain all the transactional documents pertaining to this chain of assignments,[3] such as the Forward Flow Accounts Purchase Agreement, the evidentiary record does contain unrebutted declarations that the assignments included all right, title, and interests to both Plaintiff's Account and to the Account Agreement itself, which includes the arbitration provision. (Docket Nos. 21-5, ¶¶ 6-7; 21-6, ¶¶ 5-10; 21-7; 21-8, ¶¶ 7-11). Despite having the opportunity to conduct discovery on this issue, Plaintiff has not proffered any "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," as required by Federal Rule of Civil Procedure 56(c)(1)(A) to demonstrate the existence of a genuine dispute of material fact concerning whether the Account Agreement and its arbitration provision are included in scope of the assignments at issue. *See Guidotti*, 716 F.3d at 776.

Concluding that there is no genuine dispute of material fact concerning the inclusion of the arbitration provision in the assignments at issue, and thus concluding that LVNV is the current owner of Plaintiff's account and "stands in the shoes" of Synchrony under the Account Agreement, including its arbitration provision, the Court next examines whether Defendants may enforce that arbitration provision as agents of LVNV. Defendants proffer the Limited Power of Attorney in

---

[3] Plaintiff complains that Defendants' discovery responses on this topic were deficient, and that the Court therefore should infer that more fulsome responses, had they been provided, would have been adverse to Defendants' position. However, Plaintiff never filed a motion for an order compelling discovery pursuant to Fed. R. Civ. P. 37, and Plaintiff has not otherwise proffered other evidence to establish a disputed issue of material fact on this issue.

which LVNV granted the power to Resurgent to act as LVNV's attorney-in-fact for certain enumerated purposes, including, "[e]xecuting any document or instrument and *authorizing any action* that is proper or necessary in asserting, protecting or realizing [LVNV's] ownership rights in any account or prosecuting [LVNV's] ownership duties." (Docket No. 21-9, ¶ 7) (emphasis added). This Limited Power of Attorney also provides that "[LVNV] further grants to Resurgent, as its attorney-in-fact, full authority to act in any manner both proper and necessary to effectuate and execute the foregoing powers, and ratifies every act that Resurgent may lawfully perform in exercising those powers by virtue thereof." (*Id.*). Defendants also proffer the Collection Services Agreement in which Resurgent retained Frontline to provide collection services to Resurgent's clients, which includes Plaintiff's Account owned by LVNV. (Docket No. 21-10)

Defendants contend that the plain meaning of a contract's terms control, *see Bodell Constr. Co. v. Robbins*, 215 P.3d 933, 939 (Utah 2009), and that the arbitration provision of the Account Agreement expressly provides that "[i]f either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, *agents* . . . if it relates to your account . . . ." (Docket No. 21-1 at 2) (emphasis added). Notwithstanding the plain meaning of this arbitration provision that expressly includes LVNV's agents, Plaintiff challenges Defendants' ability to invoke that provision[4] for their own benefit as a

---

[4] Plaintiff also questions whether Defendants were acting within the scope of their agency. Plaintiff points to the Limited Power of Attorney, which authorized Resurgent to act in LVNV's name for only "limited purposes," including "[e]xecuting any document or instrument and authorizing any action that is *proper* or necessary in asserting, protecting or realizing [LVNV's] ownership rights in any account or prosecuting [LVNV's] ownership duties." (Docket No. 21-9) (emphasis added). This Limited Power of Attorney also "grant[ed] to Resurgent . . . full authority to act in any manner both *proper* and necessary to effectuate and execute [these] powers," and it ratified "every act that Resurgent . . . lawfully perform[ed] in exercising [these] powers." *Id*. (emphasis added). Plaintiff argues that the scope of Resurgent's agency did not extend to any improper or unlawful actions and that its actions in purported violation of the FDCPA fall outside of the scope if its agency. While Plaintiff may have identified a disputed issue of fact as to whether Defendants acted within or outside the scope of their agency, this issue is of no moment because the Court separately determines, *infra*, that Defendants cannot invoke the arbitration provision in the Account Agreement for their own benefit even if they are acting within the scope of their agency.

11

matter of Utah law. In support of this position, Plaintiff cites to the Utah Supreme Court's decision in *Fericks v. Lucy Ann Soffe Trust*, 100 P.3d 1200 (Utah 2004), and the Tenth Circuit Court of Appeals decision in *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017).[5] In *Fericks*, the Utah Supreme Court held that "an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit." 100 P.3d at 1206. Thus, because Defendants seek to invoke the arbitration provision to adjudicate Plaintiff's statutory claims against them, they are seeking to enforce a contractual term for their own benefit rather than for the benefit of their principal, LVNV. Accordingly, Plaintiff contends that Defendants cannot compel arbitration due to *Fericks*.

In response, Defendants contend that cases applying Utah law do permit them to enforce the arbitration provision in the Account Agreement, citing *Lagrone v. Advanced Call Ctr. Techs., LLC*, No. C13-2136JLR, 2014 WL 4966738 (W.D. Wash. Oct. 2, 2104), and *St. Pierre v. Advanced Call Ctr. Techs., LLC*, No. 2:15-cv-02415, 2016 WL 6905377 (D. Nev. Nov. 22, 2016). *Lagrone* is premised on the Utah Supreme Court's decision in *Ellsworth v. American Arbitration Ass'n*, 148 P.3d 983, 989 & n.11 (Utah 2006), holding that a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties "under certain circumstances," including as an agent. *See Lagrone*, 2014 WL 4966738, at *5 (determining that *Ellsworth* "can be read as providing an exception to *Fericks'* general rule that agents typically cannot enforce provisions of their principals' contracts"). The *St. Pierre* court, for its part,

---

[5] Plaintiff also cites many additional supporting decisions from various district courts, including: *Ferro v. Allied Interstate, LLC*, No. 19-cv-49, 2019 WL 3021234 (E.D.N.Y. July 10, 2019); *Wojcik v. Midland Credit Mgmt., Inc. ("Wojcik II")*, No. 18-CV-3628, 2019 WL 3423567 (E.D.N.Y. July 30, 2019); *Wojcik v. Midland Funding, LLC ("Wojcik I")*, No. 18 CV 3628, 2019 WL 3716200 (E.D.N.Y. June 3, 2019); *Untershine v. Advanced Call Ctr. Techs., LLC*, Case No. 18-CV-77, 2018 WL 3025074 (E.D.Wis. June 18, 2018); *Dipisa v. Advanced Call Ctr. Techs., LLC*, No. 17-cv-03029, 2018 U.S. Dist. LEXIS 226065 (E.D.N.Y. May 2, 2018); and *Taylor v. Advanced Call Ctr. Techs., LLC*, Case No. 17 C 1805, 2017 WL 6988652 (N.D. Ill. Dec. 20, 2017).

acknowledges *Ellsworth* but limits its application to situations in which the agent is seeking to compel arbitration when sued for breaching a contract and not for statutory violations. 2016 WL 6905377, at *2. That court then explored "authority across the nation" regarding whether agents can use their principals' arbitration powers to adjudicate statutory claims related to the contract containing the arbitration provision before ultimately holding that "agents can use their principal's arbitration rights if the claim against the agent relates to the principal's agreement and would be subject to arbitration had it been brought against the principal in the first place." *Id*. at *3-4.

    This Court's consideration of *Lagrone* and *St. Pierre* necessitates a closer look at *Ellsworth* and its impact, if any, on *Fericks*. As an initial matter, the Court notes that in reaching its decision in *Ellsworth*, the Utah Supreme Court did not address *Fericks*, leaving open the question of whether *Ellsworth* overrules or modifies *Fericks* as to whether an agent may use its principal's arbitration provision for its own benefit. Second, although the Utah Supreme Court has not yet revisited this issue since its decision in *Fericks*, the United States Court of Appeals for the Tenth Circuit more recently addressed this issue in *Belnap*, in which it concluded that "*Ellsworth* left unscathed *Fericks'* express statement that 'an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit.'" *Belnap*, 844 F.3d at 1298 (quoting *Fericks*, 100 P.3d at 1206).[6] The *Belnap* court consequently precluded nonsignatory agents from enforcing their principal's arbitration provision in accord with the Utah Supreme Court's decision in *Fericks*. *See id*.; *see also Ferro v. Allied Interstate, LLC*, No. 19-cv-49, 2019 WL 3021234, at *4 (E.D.N.Y. July 10, 2019) ("Courts across the country . . . have thus concluded that Utah law does not permit a debt collector to enforce an arbitration

---

[6]     In reaching this conclusion, the *Belnap* court explained that the nonsignatory defendant in *Ellsworth* never attempted to enforce the arbitration provision for his own benefit but instead sought to avoid the arbitration provision. *See Belnap*, 844 F.3d at 1298.

provision in an agreement between an accountholder and a creditor under an agency theory."). Both *Lagrone* and *St. Pierre* predate *Belnap*.[7] *See also Untershine v. Advanced Call Ctr. Techs., LLC*, Case No. 18-CV-77, 2018 WL 3025074, at *8 (E.D. Wis. June 18, 2018) (considering *Lagrone* and *St. Pierre*, among other cases, and nonetheless agreeing with the *Belnap* court's analysis that "*Ellsworth* did not specifically address agency theory in the context of a nonsignatory defendant compelling a signatory plaintiff to arbitrate," and that *Fericks* remains undisturbed on this point).

On this issue, the Court must apply existing Utah law as interpreted by the Utah Supreme Court. *See Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996).[8] Here, for the foregoing reasons, the Court concludes that the Utah Supreme Court expressed extant Utah law in *Fericks*, which precludes Defendants from invoking the arbitration provision contained in the Account Agreement for their own benefit to litigate Plaintiff's FDCPA claims against them.[9]

---

[7] In their reply brief, Defendants cite to a post-*Belnap* decision from the District of Utah that permitted agents to compel arbitration pursuant to their principal's arbitration agreement. *See Seaborn v. Larry H. Miller Mercedes Benz*, Case No. 2:19-CV-941, 2020 WL 1550789 (D. Utah Apr. 1, 2020). However, the *Seaborn* court does not address either *Fericks* or *Ellsworth*, nor is it clear whether Utah law was applied as the court also stated that the arbitration agreement at issue was subject to the California Arbitration Act. *See id*. at *2 & n.15.

[8] In the absence of clear guidance by the Utah Supreme Court, this Court would be required to "look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as to analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008) (internal citation and quotation marks omitted).

[9] In reaching this decision, the Court acknowledges that the express language of the arbitration provision contained in the Account Agreement contemplates the possibility that Plaintiff would be required to arbitrate with agents of Synchrony or its assignees, and further acknowledges the credence of the rationale expressed in *St. Pierre* that:
> [p]ractically, companies act through employees and agents, and it makes little sense to allow a plaintiff to avoid what would otherwise be an arbitrable claim if brought against the principal, simply because an agent carried out that same act at the principal's behest . . . [and there is] no compelling reason to adopt a narrow rule that an agent is only shielded from claims directly arising out of the terms of a contract (when that agent's principal would not be so limited).

*St. Pierre*, 2016 WL 6905377, at *4. However, it is not the province of this Court to supplant its judgment for that of the Supreme Court of Utah.

### (b) Equitable Estoppel

Defendants also contend that they can compel arbitration pursuant to the doctrine of equitable estoppel. While Utah law recognizes three varieties of this doctrine, the only one conceivably applicable here is where a "'plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory.'" *Belnap*, 844 F.3d at 1294-95 & n.17 (quoting *Ellsworth*, 148 P.3d at 989 n.12). Here, Plaintiff's statutory claims arise from Defendants' purported conduct as nonsignatory debt collectors and not "on the contract." Consequently, Defendants cannot avail themselves of this doctrine in this instance because Plaintiff is not asserting any breach of contract claims against them pursuant to the Account Agreement (which contains the arbitration provision). Rather, Plaintiff is pursuing statutory claims against Defendants. *See Ferro*, 2019 WL 3021234, at *5-6; *Wojcik v. Midland Credit Mgmt.*, No. 18-CV-3628, 2019 WL 3423567, at *6 (E.D.N.Y. July 30, 2019); *Untershine*, 2018 WL 3025074, at *8-10.

Based upon the foregoing, Defendants cannot enforce the arbitration provision of the Account Agreement pursuant to agency or equitable estoppel theories.[10]

### IV. CONCLUSION

For the foregoing reasons, Defendants' Renewed Motion to Compel Arbitration and Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED.

---

[10] Plaintiff also opposes arbitration on the separate and independent basis that the arbitration provision requires Defendants' principal to "make a demand for arbitration" as a condition precedent before any duty to submit a claim to arbitration, and that neither Synchrony nor its assignee, LVNV, did so here. In making this argument, Plaintiff ignores another part of the arbitration provision that states, "The party who wants to arbitrate must notify the other party in writing. This notice can be given after the beginning of a lawsuit or in papers filed in the lawsuit." (Docket No. 21-1 at 2). Consequently, whether Defendants' Renewed Moton to Compel Arbitration constitutes a "demand for arbitration" within the meaning of this contractual provision is contingent upon whether Defendants' motion falls within the scope of their agency. As set forth, *supra*, there very well may be a disputed issue of fact on the scope of agency, but the Court need not reach that issue here.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date: September 29, 2022

cc/ecf: All counsel of record